STUART F. DELERY
Assistant Attorney General
GLENN M. GIRDHARRY
Senior Litigation Counsel
GEOFFREY FORNEY
Senior Litigation Counsel
SARAH WILSON
Trial Attorney
> United States Department of Justice
> Office of Immigration Litigation
> District Court Section
> 450 5th Street, NW
> Washington, DC 20001
> Telephone: 202-532-4700
> sarah.s.wilson@usdoj.gov

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **Kyung Taek KIM,** | ) | **CIVIL NO. 13-1752-AG-RNB** |
| | ) | |
| **Plaintiff,** | ) | **DEFENDANT'S OPENING** |
| | ) | **BRIEF** |
| **v.** | ) | |
| | ) | |
| **Kathy A. BARAN, in her official** | ) | **Hon. Andrew Guilford** |
| **capacity as Director, United States** | ) | |
| **Citizenship and Immigration Serv.,** | ) | Time: Submitted on the Briefs |
| **California Service Center,** | ) | Date: June 13, 2014 |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   FACTS ....................................................................................................1

III.  STATUTORY AND REGULATORY BACKGROUND ............................4

     A.    Lawful Source of Funds Requirement………………………………4

     B.    Employment Creation Requirement…………..…………………….6

     C.    At-Risk Requirement……………………………………..………7

IV.   STANDARD OF REVIEW ...................................................................14

     A.    Burden of Proof on Alien…………………………………………7

     B.    Review of Agency Action under APA………………………………8

V.    ARGUMENT………………………………………………………..8

     A.    Kim failed to sufficiently document the lawful source of his capital investment funds………………………………………………...…..9

     B.    Kim failed to establish that his capital investment would create the required number of full-time jobs for U.S. Workers…………….....12

     C.    Kim failed to demonstrate that the investment was placed at risk in the new commercial enterprise………………………………………15

VI.   CONCLUSION…………………………………………..……………19

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

## **CASES**

*Al-Humaid v. Roarke*,
      No. 09-CV-982-L, 2010 WL 308750 (N.D. Tex. Jan. 26, 2010) .................18

*Auer v. Robbins*,
      519 U.S. 452 (1997) ............................................................................9

*Bassiri v. Xerox Corp.*,
      463 F.3d 927 (9th Cir. 2006) ............................................................9

*Fence Creek Cattle Co. v. Forest Serv.*,
      602 F.3d 1125 (9th Cir. 2010)…………………………………………8

*Geo-Energy Partners v. Salazar*,
      613 F.3d 946 (9th Cir. 2010) ...........................................................13

*Indiana Municipal Power Agency v. FERC*,
      56 F.3d 247 (D.C. Cir. 1995) ...........................................................9

*Matter of Chawathe*,
      25 I. & N. Dec. 369 (AAO 2010)) ...............................................7, 15

*Matter of Ho*,
      22 I. & N. Dec. 206 (Assoc, Comm. 1998) ....................... 5, passim

*Matter of Hsiung*,
      22 I. & N. Dec. 205 (Assoc, Comm. 1998) ....................5, 6, 13, 14

*Matter of Izummi*,
      22 I. & N. Dec. 169 (Assoc, Comm. 1998) .........................5, 6, 11

*Matter of Soffici*,
22 I. & N. Dec. 158 (Assoc, Comm. 1998) ...................................... 5, passim

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)...................................................................................8

*Occidental Eng'g Co. v. INS*,
753 F.2d 766 (9th Cir. 1985) ...............................................................8

*Ramaj v. Gonzales*,
466 F.3d 520 (6th Cir. 2006) ..............................................................12

*R.L. Inv. Ltd. Partners v. INS*,
86 F. Supp. 2d 1014 (D. Haw. 2000)..................................................8, 9

*Sierra Club v. Mainella*,
459 F. Supp. 2d 76 (D.D.C. 2006).......................................................8

*Soltane v. DOJ*,
381 F.3d 143 (3d Cir. 2004) ...............................................................16

*Spencer Enterprises v. United States*,
229 F. Supp. 2d 1025 (E.D. Cal. 2001) .............................................5, 6, 9

*Systronics Corp v. INS*,
153 F. Supp. 2d 7 (D.D.C. 2001).........................................................7

*Talk America, Inc. v. Michigan Bell Telephone Co.*,
131 S. Ct. 2254 (2011).........................................................................9

*United States v. Gonzales & Gonzales Bonds and Insurance Agency*,
728 F. Supp. 2d 1077 (N.D. Cal. 2010) ..............................................16, 17

iii

1

## **STATUTES**

5 U.S.C. § 706(2)(A)..................................................................4, 8

8 U.S.C. § 1101(a)(18)....................................................................16

8 U.S.C. § 1153(b)(5)....................................................................... 4

8 U.S.C. § 1153(b)(5)(A)(ii) ............................................. 4, 6, 12, 15

8 U.S.C. § 1153(b)(5)(C) ................................................................. 7

8 U.S.C. § 1154(b) ...........................................................................7

## **Federal Register**

56 Fed.Reg. at 60,904 (quoting S. Rep. 101-55. at 21) ......................5, 12

## **Homeland Security Act**

Pub.L.No. 107-269, 116 Stat.2135)(Nov. 25, 1990) .............................5

## **Immigration Act of 1990**

Pub.L.No. 101-649, § 121(a) (Nov. 29, 1990)....................................4

## **REGULATIONS**

8 C.F.R. § 103.1(b) ........................................................................16

8 C.F.R. § 103.2(b)(1) ....................................................................10

8 C.F.R. § 103.2(b)(2)(i) .................................................................10

8 C.F.R. § 103.2(b)(2)(ii)................................................................10

iv

8 C.F.R. § 103.2(b)(3) ....................................................................................10

8 C.F.R. § 103.2(b)(15) ..................................................................................17

8 C.F.R. § 204.6(e) .....................................................................................5, 6

8 C.F.R. § 204.6(f) ...........................................................................................7

8 C.F.R. § 204.6(h) ........................................................................................13

8 C.F.R. § 204.6(j)(i)(A) .................................................................................6

8 C.F.R. § 204.6(j)(i)(B) .................................................................................6

8 C.F.R. § 204.6(j)(2) ...................................................................4, 7, 15, 17

8 C.F.R. § 204.6(j)(3) ..........................................................................4, passim

8 C.F.R. § 204.6(j)(3)(i)-(iv) ..........................................................................5

8 C.F.R. § 204.6(j)(4) ...................................................................................2, 3

8 C.F.R. § 204.6(j)(4)(i)(B) ...........................................................................13

8 C.F.R. § 204.6(j)(4)(ii) ...............................................................................13

v

## DEFENDANT'S OPENING BRIEF

## I.   INTRODUCTION

Plaintiff Kyung Taek Kim ("Kim") is an alien investor seeking an immigrant visa through the employment-based, fifth preference ("EB-5") immigrant investor visa program based on his investment in a new commercial enterprise.  United States Citizenship and Immigration Services ("USCIS") denied Kim's I-526 Immigrant Petition for Alien Entrepreneur ("I-526 petition").  USCIS denied Kim's I-526 petition on three alternative grounds: (1) he failed to comply with the regulatory requirement that he demonstrate his capital investment funds came from a lawful source; (2) he failed to demonstrate that his investment will create or has created at least ten new full-time positions to qualifying employees as required by statute; and (3) he failed to meet the regulatory requirement that he show he placed the required amount of capital "at risk" in the new commercial enterprise.  Kim challenges the agency's decision under the Administrative Procedure Act ("APA").  Because the administrative record supports USCIS's decision, the Court should grant judgment in favor of the Government.

## II.   FACTS

Kim is a citizen of the Republic of Korea residing in the United States on an E-2 visa.  Certified Administrative Record ("CAR") at 485, 682.  On February 17, 2011, through counsel, Kim filed an I-526 petition with USCIS based on his purported investment of $1,000,000.00 into Autopartsman Corporation. CAR at 682-83.  On the petition, Kim indicated that the investment is in a "new commercial enterprise resulting from the creation of a new business."  CAR at 683. Documents filed with the application show that Autopartsman subleases its space from Parts World Corporation, an existing autoparts store operating on the same premises.  CAR at 740-744.  In addition to serving as President of Autopartsman, Kim serves as the Chief Executive Officer of Parts World, which is owned by Kim's oldest brother, Danny Kim.  *See* CAR at 831; CAR at 744.

- 1 -

To demonstrate that the invested capital was obtained through lawful means, Kim submitted summary translations of three of his last five Colombian income tax returns (tax years 2010, 2008, 2006) and stated that "his last five income tax returns show that the capital originated from his income."  CAR at 688, 781-804. Kim also submitted an untranslated document that appears to pertain to his 2007 taxes and an uncertified summary translation of his 2009 income tax return.  *See* CAR at 787,802-03.  To satisfy the job-creation requirement, Kim represented in the petition that his investment had created a total of 11 new jobs because, prior to his investment, the commercial enterprise had no employees.  CAR at 684.  Kim also submitted a business plan claiming that Autopartsman expects to hire 27 fulltime employees in the next two years.  CAR at 688.  Neither the petition nor the business plan attached to the petition discussed Autopartsman's relationship with Parts World or disclosed how many of the 11 "new" hires are also or were previously employed by Parts World.  *See* CAR at 684, 688.

On September 8, 2011, USCIS issued Kim a Request for Evidence ("RFE"). CAR at 552-556.  USCIS requested additional evidence of the lawful source of his investment funds.  *Id*.  The RFE cited Kim's prior representation that his $1,000,000.00 investment originated solely from his income, but noted that according to the submitted returns Kim's cumulative income for the past five years totaled only $337,442.18.  CAR at 554-55.  The RFE requested documentation sufficient "to trace all sources and origins of the funds invested."  CAR at 555. The RFE reminded Kim that foreign language documents "must be accompanied by a full <u>English language translation</u> that has been certified by the translator as complete and accurate, and that the translator is competent to translate from the foreign language into English."  CAR at 554 (emphasis in original).  USCIS also requested additional evidence that Autopartsman created not fewer than ten full-time positions for qualifying U.S. employees.  CAR at 555.  The RFE noted that Kim failed to satisfy 8 CFR § 204.6(j)(4)'s documentary requirement that the

application, if it claims (as Kim's does) that the business has already hired ten qualifying employees, include photocopies of relevant tax records for the employees.  CAR at 556.  The RFE included very specific instructions, taken from the agency's regulations, on the documents necessary to show the new hires are qualifying employees.  *Id.*

Kim filed a timely response to the RFE.  Kim's submission included a declaration in which he claimed for the first time that his investment funds originated from a $1,238,149.19 dividend payment from Miglia Motor, S.A. ("Miglia"), and not as originally claimed from income documented in his submitted tax returns.  CAR at 560.  Kim also noted that he transferred an additional $437,718.72 "mostly comprised of dividends I issued to myself" from "overseas accounts."  CAR at 560.  Although Kim submitted documents purporting to demonstrate varying levels of ownership in various foreign enterprises, CAR at 563, 565, the only evidence of the Miglia dividend payment Kim submitted was a letter dated more than two years after Kim claims the $1,238,149.19 dividend was issued, CAR at 578-79.  Kim did not submit any evidence of the additional dividend payments he allegedly issued to himself.  *See* CAR at 558 (listing exhibits to RFE response).  In an attempt to satisfy 8 CFR § 204.6(j)(4), Kim submitted W-4's and I-9's for sixteen employees.  CAR at 621-657.

On January 11, 2012, the California Service Center Director denied Kim's I-526 petition on three grounds.  CAR at 544-551.  In addition to finding that Kim had failed to properly document the lawful source of the invested funds and sufficient job creation, she concluded that the record contained insufficient evidence that Kim's investment was "at risk" in the new commercial enterprise.  CAR at 547.

On February 3, 2012, Kim appealed the Director's denial decision to the USCIS Administrative Appeals Office ("AAO") and supplied the AAO with additional evidence related to two of the three grounds for denial.  CAR at 21-27.

- 3 -

Kim did not provide any additional evidence to trace the lawful path of the invested funds. *See* CAR at 26-27 (listing additional evidence submitted with the appeal). On May 24, 2013, the AAO dismissed Kim's appeal and affirmed the Director's decision on all three grounds. CAR at 1-8. On June 20, 2013, Kim filed a motion to reopen and for reconsideration, CAR at 823, which was denied on September 18, 2013, CAR at 810-819. On November 5, 2013, Kim filed his complaint with this Court challenging the agency's decision under the Administrative Procedure Act ("APA") as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Complaint, ECF No. 1 at ¶ 10; 5 U.S.C. § 706(2)(A).

## III.   STATUTORY AND REGULATORY BACKGROUND

In 1990, Congress amended the Immigration and Nationality Act ("INA") to provide for classification of "employment creation" immigrants who invest capital in new commercial enterprises in the United States that create full-time employment of United States workers. *See* Immigration Act of 1990, Pub. L. No. 101-649, § 121(a) (Nov. 29, 1990) (codified at 8 U.S.C. § 1153(b)(5)). This immigrant visa category is also known as the EB-5 immigrant investor visa. In order to qualify, the alien investor must first show that the invested capital can be traced back to a lawful source. 8 C.F.R. § 204.6(j)(3). Additionally, the alien's investment must "create full-time employment for not fewer than ten United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters)." 8 U.S.C. § 1153(b)(5)(A)(ii). Finally, the investor must demonstrate that the qualifying investment was placed at risk in the new commercial enterprise. 8 C.F.R. § 204.6(j)(2).

### A.   Lawful Source of Funds Requirement

Every alien investor must demonstrate that the invested capital can be traced back to a lawful source. 8 C.F.R. § 204.6(j)(3). For the purposes of an EB-5

- 4 -

investment, the regulations define "capital," to not include any assets that the alien investor acquired directly or indirectly by unlawful means. *See* 8 C.F.R. § 204.6(e). The former Immigration and Naturalization Service ("INS")[1] defined "capital" this way to "effectuate Congress's intent" that an alien investor demonstrate the lawful source of his investment funds. *See* 56 Fed. Reg. at 60,902 (citing S. Rep. 101-55, at 21); 8 C.F.R. § 204.6(j)(3). To demonstrate this, the alien investor must include with his I-526 petition, as applicable: financial documents such as foreign business registration records, corporate and personal tax returns filed within five years of filing the petition, certified copies of judgments or evidence of all pending criminal, civil, or administrative actions involving monetary judgments against the investor within fifteen years of filing the petition, or any other evidence identifying any other source of the investor's capital. *See* 8 C.F.R. §§ 204.6(j)(3)(i)-(iv). The INS indicated that the purpose of this evidentiary requirement is to carry out "Congress's instruction that 'processing of an individual visa not continue under this section if it becomes known to the Government that the money invested was obtained by the alien through other than legal means[].'" 56 Fed. Reg. at 60,904 (quoting S. Rep. 101-55, at 21).

An alien investor cannot satisfy the requirements of 8 C.F.R. § 204.6(j)(3) without sufficiently documenting the path of the investment funds. *See Matter of Izummi*, 22 I. & N. Dec. 169, 195 (Assoc. Comm. 1998); *Matter of Soffici*, 22 I. & N. Dec. 158, 165 (Assoc. Comm. 1998). An alien investor must present sufficient documentary evidence of the source of the funds he invests, and that the funds are his own. *See Spencer Enterprises, Inc. v. United States*, 229 F. Supp. 2d 1025, 1040 (E.D. Cal. 2001) *aff'd* 345 F.3d 683 (9th Cir. 2003) (citing *Matter of Soffici*,

---

[1] Under the Homeland Security Act of 2002, Congress abolished the INS and transferred the former agency's functions to various agencies within the Department of Homeland Security ("DHS"), including United States Citizenship and Immigration Services ("USCIS"). *See* Pub. L. No. 107-269, 116 Stat. 2135 (Nov. 25, 2002).

22 I. & N. Dec. at 158; *Matter of Ho*, 22 I. & N. Dec. 206, 206 (Assoc. Comm. 1998). An alien investor cannot satisfy his burden of establishing the path of the investment funds by "simply going on record without providing any supporting documentary evidence." *Matter of Ho*, 22 I. & N. Dec. at 211 (internal citation omitted). These are technical requirements that serve a valid government interest – to confirm that the funds utilized in the program are not of suspect origin. *See Spencer Enterprises, Inc.*, 229 F. Supp. 2d at 1040; 56 Fed. Reg. at 60,904; S. Rep. 101-55, at 21.

### B.    Employment Creation Requirement

The alien must also demonstrate that his investment into the new commercial enterprise will create at least ten full-time jobs for qualifying employees. The statute requires employment creation for a "United States citizen, a lawfully admitted permanent resident or other immigrant lawfully authorized to be employed in the United States," which does not include the alien investor, his dependents, or any other nonimmigrant alien. 8 U.S.C. § 1153(b)(5)(A)(ii); 8 C.F.R. § 204.6(e). To satisfy this burden, the alien must provide USCIS with either tax records, Forms I-9, or other similar documents for workers already hired, or a comprehensive business plan indicating that the business will hire at least ten qualifying employees within the next two years. 8 C.F.R. § 204.6(j)(i)(A), (B). Importantly, if the alien is investing in a pre-existing business, then he must demonstrate the pre-investment employment level and establish that his investment will add ten new jobs and not cause any loss of employment. *See Matter of Hsiung*, 22 I. & N. Dec. 205, 205 (Assoc. Comm. 1998); *Matter of Soffici*, 22 I. & N. Dec. at 167. Moreover, any business plan that the alien uses to show a projection of likely job creation under 8 C.F.R. § 204.6(j)(i)(B) must be sufficiently detailed to permit USCIS to draw reasonable inferences about the business's job-creation potential. *See Matter of Ho*, 22 I. & N. Dec. at 213.

### C.    At-Risk Requirement

Congress set the qualifying capital investment level for aliens who participate in the EB-5 program at $1,000,000.00 if the investment project is not located within a designated "targeted employment area."  8 U.S.C. § 1153(b)(5)(C); 8 C.F.R. § 204.6(f).  The alien demonstrates that he has invested or is actively in the process of investing the required amount of capital by providing USCIS with evidence that he has "placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk."  8 C.F.R. § 204.6(j)(2).  The regulations make clear that any evidence of the alien's mere intent to invest or of a prospective investment arrangement that entails no present commitment fails to demonstrate that the alien is actively in the process of investing.  *Id*.  Rather, the evidence must demonstrate the alien's actual commitment of the required amount of capital.  *Id*.  Importantly, USCIS has established that an alien cannot satisfy this "at risk" requirement by merely depositing funds into an account held by the new commercial enterprise.  *Matter of Ho*, 22 I. & N. Dec. at 210.  The alien must provide evidence demonstrating how the new commercial enterprise will use the deposited funds; otherwise USCIS has no assurance that the new commercial enterprise will in fact use the alien's capital investment funds to finance its business operations.  *See id*. at 210-211.

## IV.    STANDARD OF REVIEW

### A.    Burden of Proof on Alien

In adjudicating an I-526 petition, USCIS must determine whether the facts stated in the petition and supporting documents are true, *see* 8 U.S.C. § 1154(b), and it may reject statements that it finds unsubstantiated or without a factual basis.  *See Systronics Corp. v. INS*, 153 F. Supp. 2d 7, 15 (D.D.C. 2001).  The burden of proof rests on the alien investor to establish by a preponderance of evidence that he is fully qualified for the benefit sought.  *See* 8 U.S.C. § 1361; *Matter of Chawathe*, 25 I. & N. Dec. 369, 374-76 (AAO 2010).

### B.    Review of Agency Action under the APA

"[I]n a case involving review of a final agency action under the [APA] . . . the standard set forth in Rule 56[a] does not apply because of the limited role of a court in reviewing the administrative record." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006) (citations omitted); *see also Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985).  Merits brief may therefore serve as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review. *Mainella*, 459 F. Supp. 2d at 90 (discussing APA summary judgment briefing).

In adjudicating cases under the APA, a court may only set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  Under this deferential standard, a court reviews the agency's decision to determine if it "articulated a rational connection between the factual findings and its decision." *See Fence Creek Cattle Co. v. Forest Serv.*, 602 F.3d 1125, 1132 (9th Cir. 2010).  Under the "arbitrary and capricious standard, the standard is narrow and the court should not substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### V.    ARGUMENT

The AAO correctly identified three grounds to deny Kim's I-526 petition: (1) Kim failed to document the lawful source of his capital investment funds, (2) Kim failed to demonstrate that the new commercial enterprise has met or will meet the employment creation requirement, and (3) Kim failed to show that he placed the required amount of capital at risk in the new commercial enterprise.  CAR at 1-8; 810-819.  Where, as here, USCIS denies an application on multiple alternative grounds, the Court must affirm the agency's decision as long as any one of the grounds is valid. *R.L. Inv. Ltd. Partners v. INS*, 86 F. Supp. 2d 1014, 1021 (D.

Haw. 2000) *aff'd* 273 F.3d 874 (9th Cir. 2001); *see also Indiana Municipal Power Agency v. FERC*, 56 F.3d 247, 256 (D.C. Cir. 1995).  Conversely, in order to prevail under the APA standard, Kim must demonstrate that *all* of the asserted grounds are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *See Spencer Enterprises*, 345 F.3d at 693.  Because Kim cannot plausibly make this showing, the Court should uphold USCIS's decision and grant judgment in favor of the agency.

> **A.      Kim failed to sufficiently document the lawful source of his capital investment funds.**

After initially claiming in his application that the investment capital originated from income listed in his tax returns, *see* CAR at 688, Kim now claims that unreported dividend payments comprise the true source of his investment capital, CAR at 560.  The only properly translated evidence Kim submitted to support his new claim is an unsworn letter dated more than two years after the first alleged dividend payment.  *See* CAR at 578-79.  Accordingly, USCIS determined that Kim failed to sufficiently prove the lawful source of his investment capital and denied the application based on his failure to satisfy 8 C.F.R. § 204.6(j)(3).

The agency did not abuse its discretion in finding that Kim's secondary evidence of dividend capital – the delayed and unsworn letter – insufficient to meet his burden of proving the capital's lawful source.  USCIS's interpretation of 8 C.F.R. § 204.6(j)(3) is entitled to significant deference.  Where an organic statute and its regulations are ambiguous, courts should defer to the agency's interpretation of its own regulations.  *Talk America, Inc. v. Michigan Bell Telephone Co.*, 131 S. Ct. 2254, 2260-61 (2011); *see also Bassiri v. Xerox Corp.*, 463 F.3d 927, 930-32 (9th Cir. 2006).  In such a case, an agency's interpretation of its own validly issued regulation is "controlling . . . unless it is plainly erroneous or inconsistent with the regulation."  *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  The agency's determination that the letter is insufficient is independently supported by

- 9 -

(1) the agency's determination that Kim presented an inconsistent record on the source of the investment funds, (2) the lack of direct or corroborating evidence to support Kim's claim, along with Kim's failure to explain the lack of evidence, and (3) Kim's failure to abide by the translation and certification requirements.  Thus, USCIS properly interpreted 8 C.F.R. § 204.6(j)(3) to require Kim to sufficiently document the source of the investment capital and the agency's denial on this basis is not arbitrary, capricious, or otherwise contrary to law.

The letter is insufficient to overcome Kim's prior inconsistent claim regarding the source of the $1,000,000.00 investment.  The burden is on the applicant to resolve any inconsistencies with competent, objective evidence.  *See Matter of Ho*, 19 I. & N. Dec. at 591-92.  Kim's assertion that the investment income is from dividend payments came after the California Service Center Director noted the total income shown on Kim's five tax documents was far less than half of the invested capital.  *See* CAR at 782, 794, 801.  Although Kim attempted to address the issue by arguing that dividend payments are a form of income, making his initial claim at least partially true, Kim's clarification does not address the fact that the dividend income is not listed in the submitted tax documents as he claimed in the memorandum supporting his application.  Thus, Kim's initial claim is still demonstrably false and raises the question of why, if the dividend payments were taxable income, they were not reported on the submitted returns.  Accordingly, it was not an abuse of discretion for USCIS to doubt Kim's new explanation in the absence of timely and direct evidence of the dividend disbursement.

USCIS's decision is further supported by Kim's failure to supply any direct or competent corroborating evidence of the dividend payment in compliance with 8 C.F.R. § 103.2(b)(2)(i) or offer any explanation for its absence in compliance with § 103.2(b)(2)(ii).  As mentioned above, despite Kim's claim that the dividends constitute income for tax purposes, Kim's submitted returns do not list the

dividend income.  Additionally, the 2010 financial statement Kim submitted for Migilia – the entity Kim claims issued the dividends – does not show the dividend disbursements.  As a result of Kim's failure to offer competent evidence or an explanation of its unavailability it was proper for the agency to find the letter alone insufficient to satisfy Kim's burden of proof.  *See* 8 C.F.R. § 103.2(b)(1) (unavailability of required evidence may create a presumption of ineligibility for the benefit sought).

The remaining evidence Kim submitted on this issue, in addition to being insufficient[2], fails to satisfy the agency's translation requirements.  According to 8 C.F.R. § 103.2(b)(3), "Any document containing foreign language submitted to USCIS shall be accompanied by a full English language translation which the translator has certified as complete and accurate, and by the translator's certification that he or she is competent to translate from the foreign language into English."  Although the agency repeatedly reminded Kim of this requirement, Kim failed to supplement the record with complete certified translations of Kim's income tax returns, documentation of his ownership in Miglia, and balance sheets for Miglia.  Therefore, it was not arbitrary or capricious for the agency to follow its regulations and decline to consider those documents.  Courts have upheld the

---

[2] Even if this evidence had been submitted in compliance with the translation requirements, it does not demonstrate the availability of specific liquid assets that were then invested in the new commercial enterprise.  Kim's evidence of ownership in Miglia and Latina de Repuestos does not satisfy the requirement that Kim document the specific path of the investment funds.  *See Matter of Izummi*, 22 I. & N. Dec. at 195; *Matter of Soffici*, 22 I. & N. Dec. at 165.  Specifically, Kim failed to submit evidence showing that lawful funds were used to purchase shares in the companies even after the agency documented the evidentiary gap.  *See* CAR at 4.  This issue was therefore abandoned by Kim.  Kim also failed to submit any additional evidence of dividend payments issued from Latina de Repuestos to show that his interest in Latina de Repuestos resulted in investable capital.  Therefore, these documents, without more, do little to trace the specific path of the investment made in the new commercial enterprise.

1  application of similar requirements in other contexts.  *See, e.g., Ramaj v. Gonzales*,
2  466 F.3d 520, 530 (6th Cir. 2006).

3  USCIS's interpretation of 8 C.F.R. § 204.6(j)(3) as requiring Kim to provide
4  sufficient documentation of a dividend payment is both correct and consistent with
5  the regulation.  As mentioned, the implementing regulation at 8 C.F.R. § 204.6(j) is
6  intended to carry out Congress's instruction that the agency deny an alien
7  investor's EB-5 immigrant visa if the investment funds originate from an unlawful
8  source.  *See* 56 Fed. Reg. at 60,904 (quoting S. Rep. 101-55, at 21).  Here, Kim's
9  inconsistent story, the lack of direct or corroborating evidence, and Kim's failure
10 to provide properly translated and certified documentation, each independently
11 justify USCIS's decision to find the unsworn and delayed letter insufficient to
12 carry his burden of proof.  The Court should uphold USCIS's denial of Kim's I-
13 526 petition on this ground.

14  **B.    Kim failed to establish that his capital investment would create**
15  **the required number of full-time jobs for U.S. workers.**

16  USCIS also denied Kim's I-526 petition because he failed to provide
17 evidence that his investment in Autopartsman fulfilled the congressional purpose
18 of the EB-5 program of creating at least ten full-time jobs for qualifying employees
19 as required by 8 U.S.C. § 1153(b)(5)(A)(ii).  The agency determined that Kim's
20 investment was in an already operational business and, as a result, he was required
21 to show that his investment has resulted (or will result) in new employment.
22 Because the CAR supports the agency's determination that Kim failed to present
23 evidence to satisfy the job creation requirement for investment in an operational
24 business, the Court can also affirm the AAO's decision on this ground.

25  Engaging in a new commercial enterprise through investment into an already
26 operational business does not exempt the petitioner from the job-creation

27
28

requirement.[3]  The new commercial enterprise must create employment for at least ten full-time employees beyond the number of employees employed with the business prior to the capital investment.[4]  If the alien investor is investing in a pre-existing, ongoing business, he must provide evidence establishing the existing employment level and then demonstrate that his investment will create, or has created, ten new full-time positions for qualifying employees without causing an actual loss of employment.  *See Matter of Soffici*, 22 I. & N. Dec. at 167; *Matter of Hsiung*, 22 I. & N. Dec. at 204-05; 8 C.F.R. § 204.6(j)(4)(i)(B).  The investor does

_____

[3] Kim, in his motion to reconsider, mistakenly contends that "the key disagreement" is "whether Autopartsman is a new commercial enterprise."  CAR at 831.  The agency, however, does not dispute this point (and did not deny the petition on that basis).  *See* 8 C.F.R. § 204.6(h) (The establishment of a new commercial enterprise may consist of: "(1) The creation of an original business; (2) The purchase of an existing business and simultaneous or subsequent restructuring or reorganization such that a new commercial enterprise results; or (3) The expansion of an existing business through the investment of the required amount, so that a substantial change in the net worth or number of employees results from the investment of capital.").  Rather, the agency contends that, because Kim's investment was in an operational business, he cannot meet his burden of showing job creation without providing information regarding Parts World's pre-investment employment level.  Kim failed to provide this information at any stage of the administrative proceedings and, therefore, the agency's denial of petition on this basis was not arbitrary or capricious.

[4] There is an exception where the existing business qualifies as a "troubled business."  *See* 8 C.F.R. § 204.6(j)(4)(ii).  A "troubled business" is a business that has been in existence for at least two years, has incurred a net loss for accounting purposes (determined on the basis of generally accepted accounting principles) during the twelve- or twenty-four month period prior to the priority date on the alien entrepreneur's Form I-526, and the loss for such period is at least equal to twenty percent of the troubled business's net worth prior to such loss.  Kim has never suggested that Parts World is a troubled business and should be precluded from doing so as part of his APA challenge.  *See Geo-Energy Partners v. Salazar*, 613 F.3d 946, 959 (9th Cir. 2010).

not satisfy the job-creation requirement by merely retaining existing employees following the investment. *Id.*

The AAO correctly determined that the record does not support Kim's claim that Autopartsman's business is unrelated to Parts World. Kim's initial filings with USCIS show that Autopartsman and Parts World share executive officers, with Kim acting as the Chief Executive Officer of both corporations. *See* CAR at 744 (signing agreement as CEO of both corporations). Kim submitted documents showing that Parts World assigned its lease to Autopartsman, demonstrating that, following Kim's investment, Autopartsman operated the same type of business as Parts World at the same location. *See id.* Another document submitted with the petition indicates that Autopartsman, in addition to assuming Parts World's lease agreements, assumed service agreements from Parts World, *see* CAR at 765-66 (service agreement strikes through "Parts World" and replaces the text with "Autopartsman"), and utilized Parts World employees to conduct its business, *see* CAR at 757 (listing employee with Parts World email address as Autopartsman's "billing contact"). Based on these facts, it was not arbitrary or capricious for the AAO to conclude that Kim's investment was in an operational business.

Because Kim's investment was in an operational business, it was not sufficient for Kim to rely on the existence of ten or more employees or on the business plan without first establishing Parts World's level of employment before the date of his investment. *See Matter of Soffici*, 22 I. & N. Dec. at 167; *Matter of Hsiung*, 22 I. & N. Dec. at 204-05. As an existing business, Kim was required to show that Autopartsman had not simply subsumed Parts World's employees. *See Matter of Soffici*, 22 I. & N. Dec. at 167. Rather, Kim must show that Autopartsman had added, or will add, ten full-time employees beyond the number of employees previously employed by Parts World. *Id.* Because Kim did not submit *any* evidence related to pre-investment employment levels, the agency did not act arbitrarily or capriciously in finding Kim failed to carry his burden.

Accordingly, the AAO correctly denied Kim's I-526 petition for failing satisfy his burden of proving Autopartsman is an original business and his investment created the requisite number of new jobs. *See* 8 U.S.C. § 1153(b)(5)(A)(ii); *Matter of Soffici*, 22 I. & N. Dec. at 167. Because the CAR supports the AAO's determination, the Court may also affirm the AAO's decision on this ground.

**C.   Kim failed to demonstrate that the investment was placed at risk in the new commercial enterprise.**

The AAO also denied Kim's I-526 petition because he failed to establish that the invested capital was placed at risk in Autopartsman. The burden of proof rests solely on the alien investor to establish by a preponderance of evidence that he has satisfied all eligibility requirements for I-526 petition approval. *See* 8 U.S.C. § 1361; *Matter of Chawathe*, 25 I. & N. Dec. at 374-76. The AAO determined that Kim failed to meet this burden and demonstrate satisfaction of 8 C.F.R. § 204.6(j)(2), that he placed the full amount of required capital "at risk." CAR at 4-6; 816-17. Because the CAR supports this determination, the Court should affirm the agency's decision denying Kim's I-526 petition.

In the initial denial, the California Service Center Director incorrectly indicated in her decision that the RFE requested a comprehensive list of all funds placed at risk in Autopartsman and that Kim failed to comply with that request. CAR at 544-47. On appeal, Kim noted the error and submitted the requested evidence to show that that Kim's invested capital is "at risk" in the new commercial enterprise. CAR at 23-24. The AAO acknowledged the error regarding the contents of the RFE, but decided that it was appropriate to consider the new evidence Kim submitted on appeal. CAR at 5. In reviewing the new evidence, the AAO identified two issues. First, the AAO noted the lack of evidence that the $1,629,793 in inventory purchases made by Autopartsman to date was made from Kim's investment and not from the $2,739,929.64 in net income

- 15 -

shown on the submitted balance sheets.  CAR at 6.  Secondly, the AAO noted that the balance sheet showed Autopartsman made a loan of $1,477,578.48 to an undisclosed party and another two loans of $123,678.96 each.  The AAO further noted that the petitioner failed to demonstrate how making such loans would place Kim's investment "at risk" in the new commercial enterprise or make Kim's investment available to the business responsible for the job creation.  Consequently the AAO concluded such a use of invested capital does not satisfy the purpose of the statute.  CAR at 6.  Accordingly, the AAO dismissed Kim's appeal.

Rather than address these two issues in his motion for reconsideration, Kim attempted to withdraw the evidence he submitted with the appeal brief.  Kim contended that he "should be deemed to have met his burden by default" because "the initial RFE never asked for any evidence on this issue."  CAR at 831.  Left with no arguments or new evidence to consider regarding the Kim's failure to satisfy the at-risk requirement, the AAO had no choice but to deny the reconsideration motion on this ground.

As a threshold matter, the AAO conducts appellate review on a *de novo* basis.  *See Soltane v. DOJ*, 381 F. 3d 143, 145 (3d Cir. 2004).  The AAO may deny an immigrant visa petition that fails to comply with the technical requirements of the law, even if the agency decision below does not identify all possible grounds for denial.  *Id*.  Further, the AAO is authorized to engage in appropriate fact-finding to administer and enforce the statutory and regulatory provisions of the EB-5 program.[5]  As a result, it was appropriate for the AAO to consider the

---

[5] Pursuant to 8 U.S.C. § 1101(a)(18), the Secretary of Homeland Security delegated investigatory authority to adjudication officers of the AAO, *see* 8 C.F.R. § 103.1(b), and further vested administrative appellate authority with USCIS and the AAO, *see* Delegation Order No. 0150.1, § 2(U) (June 5, 2003).  Moreover, in *United States v. Gonzales & Gonzales Bonds and Insurance Agency*, the court found that the Secretary's delegation of appellate authority to USCIS and the AAO was permissible, and concluded as a result that the agency's "fact-finding procedures include a valid appellate process."  728 F. Supp. 2d 1077, 1085 (N.D. Cal. 2010).  Thus, USCIS and the AAO are authorized to engage in appropriate

evidence Kim submitted with the appeal and make a determination regarding the sufficiency of that evidence.  To the extent that Kim complains that he did not have sufficient time to compile the requested evidence, he could have sought additional time to supplement the record on that basis.  *See* CAR at 816; 21 (Part 2).  Alternatively, Kim could have raised the concern as part of his appeal to the AAO.  In any event, it was not appropriate for Kim to attempt to withdraw his evidence as a challenge to the California Service Center Director's decision on a motion for reconsideration.  *Cf.* 8 C.F.R. § 103.2(b)(15) (facts in a withdrawn petition "shall be material to the new benefit request").  From the outset, the burden was on Kim to provide USCIS with sufficient evidence to satisfy the at-risk requirement and explain any inconsistencies in the record.  Therefore, it would be inappropriate for this Court to find the agency acted arbitrarily or capriciously in declining to waive the at-risk requirement on the basis of a mistake in the Director's decision.

Secondarily, as Kim acknowledges in his motion for reconsideration, he has not submitted evidence sufficient to show that his full investment is at risk in the new commercial enterprise.  *See* CAR at 831 ("[T]he evidence submitted with the original appeal on the issue of capital at risk . . . was an incomplete submission due to time constraints . . . .").  An alien investor cannot satisfy the at-risk requirement of 8 C.F.R. § 204.6(j)(2) by merely transferring the required capital amount into a bank account held by the new commercial enterprise.  *Matter of Ho*, 22 I. & N. Dec. at 209.  Rather, the investor must provide evidence of how the business will spend the investor's transferred capital through the actual undertaking of business activities.  *Id.* at 209-10.  Otherwise, USCIS has no assurance that the new commercial enterprise will in fact use the investment funds to carry out its business, thus advancing the congressional purpose of job creation for U.S.

---

fact-finding to administer and enforce the statutory and regulatory provisions of the EB-5 program.

workers.  *Id.* at 210; *see also Al-Humaid v. Roark*, No. 09-CV-982-L, 2010 WL
308750, at * 4 (N.D. Tex. Jan. 26, 2010).

Here, the regulations required Kim to make a capital investment amount of
$1,000,000.00.  8 C.F.R. § 204.6(f)(1).  Kim, therefore, needed to adequately
demonstrate to USCIS that Autopartsman in fact used, or would use, his
$1,000,000.00 to carry out its business activities.  *Matter of Ho*, 22 I. & N. Dec. at
209-10.  Kim has not submitted any evidence to demonstrate that Kim's
investment has been used to cover Autopartsman's expenses.  The balance sheet
suggests that those expenses could have been paid from the business's income and
not from Kim's investment.  *See* CAR at 816.  Further, Kim failed to provide
evidence that any unused portion of his capital investment funds were at-risk.  *See*
*Matter of Ho*, 22 I. & N. Dec. at 209 (petitioner's failure to adequately explain how
the business will use capital placed into its account does not meet the "at risk"
requirement).  Finally, as noted by the AAO, the size of the third party loan shown
on the balance sheet raises serious concerns that Kim's investment may have, in
part, financed the loan, and that Kim failed to demonstrate how the making of such
a loan using his investment capital would place his investment capital properly at
risk or how it would make his investment capital available to the business most
closely responsible for creating the employment upon which his petition is based.[6]
Therefore, the AAO correctly dismissed the appeal and denied the motion for
reconsideration on this ground.

Accordingly, the Court can also affirm the agency's denial of Kim's I-526
petition on this ground.

---

[6] The AAO, in denying Kim's motion, also noted the mysterious disappearance of
the $1,477,578.48 from the 2011 balance sheet and 2012 tax return (which lacks
indicia of filing) submitted with Kim's motion.  CAR at 817.  Because Kim has the
burden of explaining any inconsistencies in the record with objective evidence, the
AAO was not required to disregard the loan without further evidence and
explanation by Kim.  *See Matter of Ho*, 19 I. & N. Dec. at 591-92.

**VI.    CONCLUSION**

As indicated, the Court must affirm USCIS's decision as long as any one of the stated grounds for denying Kim's I-526 petition is valid.  *See Spencer Enterprises*, 345 F.3d at 693; *R.L. Inv. Ltd. Partners*, 86 F. Supp. 2d at 1021. Accordingly, for any (or all) of the reasons above, the Court should deny Kim's claims in their entirety, affirm USCIS's denial of Kim's I-526 petition, and grant judgment in favor of the Government.

Dated:  May 9, 2014                              Respectfully submitted,

                                                  STUART F. DELERY
                                                  Assistant Attorney General
                                                  GEOFFREY FORNEY
                                                  Senior Litigation Counsel
                                                  GLENN M. GIRDHARRY
                                                  Senior Litigation Counsel

                              By:    /s/ Sarah Wilson
                                                  SARAH WILSON
                                                  Trial Attorney
                                                  United States Department of Justice
                                                  Office of Immigration Litigation
                                                  District Court Section
                                                  450 5th Street, NW
                                                  Washington, DC 20001
                                                  Telephone: 202-532-4700
                                                  sarah.s.wilson@usdoj.gov

1
2              **<u>CERTIFICATE OF SERVICE</u>**
3                  CASE NO. CV 13-1752-AG-RNB
4        I certify that on May 9, 2014, I served a copy of the foregoing on the
5  attorney of record below by filing this document with the Clerk of Court through
6  the CM/ECF system, which will provide electronic notice and an electronic link to
7  the attorney below.
8        Peter I. Hwang
9        phwang@davidkimlaw.com
10
11                              /s/ Sarah Wilson
12                              SARAH WILSON
13                              Trial Attorney
14                              United States Department of Justice
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i