Peter I. Hwang, Esq. SBN # 170089
Law Offices of David Y. Kim
3550 Wilshire Blvd., Ste. 640
Los Angeles, California 90010
Tel:   (213) 384-8602
Fax:   (213) 385-4825
phwang@davidkimlaw.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYUNG TAEK KIM, AN INDIVIDUAL, <br><br>          **Plaintiff.** <br><br> v. <br><br> KATHY A. BARAN, DIRECTOR OF THE CALIFORNIA SERVICE CENTER, U.S. CITIZENSHIP & IMMIGRATION SERVICES, <br><br>          **Defendant.** | Case No.: SACV 13-1752 AG (RNBx) <br><br> **PLAINTIF'S RESPONSIVE BRIEF IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT [All Filed Concurrently]** <br><br> Before the Honorable Judge Andrew J. Guilford, U.S. District Court Judge <br><br> **MOTION DUE DATE:   13-JUN-2014** <br><br> **COURTROOM:        10D (SA)** |

     May it please this Court.  Plaintiff, Kyung Taek Kim ("Plaintiff") submits its Responsive Brief in support of its Cross Motion for Summary Judgment.

## TABLE  OF  CONTENTS

I.   INTRODUCTION & SUMMARY OF COUNTERARGUMENTS…..…1

II.   LEGAL STANDARD OF REVIEW AND BURDEN OF PROOF……....1

   1.  APA Standard of Review for Agency Decisions……........................…1

   2.  Preponderance of the Evidence Standard of Proof Applies to
      Original USCIS Administrative Actions……………………………3

III.  LEGAL ARGUMENTS & ANALYSIS…………………..…....…….4

   A.  An objective review of the CAR supports a positive finding that
      Plaintiff met his source of funds burden by the preponderance and
      Defendant abused its discretion by unilaterally imposing additional
      criteria over and beyond the clear, objective criteria under 8
      C.F.R.§204.6(j)(2) as set forth in the controlling 9th Circuit cases of
      Ruangswang & Patel…………………………………..…………4

   1.  Plaintiff has proved lawful source of funds beyond the
      preponderance and any inconsistencies arise from Defendant's lack
      of an objective, reasonable interpretation of the CAR………………5

      a. Any inconsistencies that arise originate from Defendant's
         failure to acknowledge Plaintiff's Exhibit 3 supporting
         documentation attached to Plaintiff's initially filed Form
         I-526……………………………………………………………5

      b. The Miglia Dividend Distribution Letter ("Miglia Letter")
          properly corroborates lawful source of funds under Izummi,
         Soffici, and Chawathe; in addition, the translation argument is
         irrelevant as this primary piece of evidence is in the English
         language …………………………………………………..6

2. **Defendant abused its discretion by unilaterally imposing additional criteria over and beyond the clear, objective criteria under 8 C.F.R. §204.6(j)(2) as set forth in the controlling 9th Circuit cases of Ruangswang & Patel**……………….……….…....9

B. **An objective review of the CAR supports a positive finding that Plaintiff's comprehensive business plan ("Business Plan") exceeds the requirements set forth in the seminal case of Matter of Ho, and that Defendant abused its discretion twice here by first ignoring the Matter of Ho adjudicators' mandate and then by completely disregarding Plaintiff's originally submitted substantial evidence, the Business Plan**…………………………………………………………....11

  1. **An objective review of the CAR and a Matter of Soffici analysis lead to the conclusion that Autopartsman is a newly created commercial enterprise and not the purchase of a preexisting business**……........11

  2. **Defendant committed an abuse of discretion by first ignoring or acting inconsistent with the Matter of Ho adjudicators' guidelines, and then by completely disregarding Plaintiff's substantial evidence set forth**……………………….………………………………..15

C. **Defendant is procedurally barred from raising the "at risk" issue for committing a clear violation of Plaintiff's constitutional procedural due process rights; nevertheless, Plaintiff still satisfies the "at risk" issue by the preponderance, completing his EB-5 prima facie case**….17

  1. **Defendant is procedurally barred from raising the "at risk" issue for committing a clear abuse of discretion by violating Plaintiff's procedural due process notice rights during the RFE stage and again takes rogue action directly in conflict with the AFM and USCIS**

**Policy Memoranda**……………………………………………………..…...17

    **2. Nevertheless, an objective review of the CAR leads to a positive finding that Plaintiff has satisfied the "at risk" element by the preponderance, completing Plaintiff's prima facie showing for EB-5 eligibility**……………...……………………………………………...19

**IV.    CONCLUSION**……………………………………………………….24

    **CERTIFICATE OF SERVICE**……………………………………………..25

# TABLE OF AUTHORITIES

## U.S. CONSTITUTION

5th Amendment of the United States Constitution…………………………19,24

## U.S. SUPREME COURT CASES

*Heckler v. Chaney*, 470 U.S. 821, 833 (1985)……………………….........2,24

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971)….2,24

*U.S. v. Cardozo-Fonseca*, 480 U.S. 421 (1987)……………………….…..3,4

## FEDERAL CASES

*Love Korean Church v. Chertoff*, 549 F.3d 749, 759-60 (9th Cir. 2008)…………2

*Fred 26 Importers, Inc. v. DHS*, 445 F. Supp. 2d 1174 (2006)…………………..2

*Kaliski v. District Dir. of INS*, 620 F.2d 214, 216 n.1 (9th. Cir. 1980)…………..2

*Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993)………………..3

*Evangelical Lutheran Church in America v. INS*, 288 F. Supp. 2d 32, 43
(D.D.C. 2003)…………………………………………………………………3

*Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404-05 (D.C. Cir. 1995)……..………3

*Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir. 2000)......................................4

*Ruangswang v. INS*, 591 F.2d 39 (9th Cir. 1978)……………………..4,9,10,11,24

*Patel v. INS*, 638 F.2d 1199 (9th Cir. 1980)…………………………..4,9,10,11,24

## AGENCY DECISIONS

*Matter of Soffici*, 22 I&N Dec. 158 (Assoc. Comm., 1998)...…2,6,7,8,11,12,13,15

*Matter of Izummi*, 22 I&N Dec. 169 (Assoc. Comm., 1998)……………….…2,6,7,8

*Matter of Hsiung*, 22 I&N Dec. 201 (Assoc. Comm., 1998)………..2,20,21,22,24

*Matter of Ho*, 22 I&N Dec. 206 (Assoc. Comm., 1998)........................................
…………………………………………………...2,5,11,12,15,16,17,20,21,22,24

*Matter of Chawathe*, 25 I&N Dec. 360 (AAO 2010)………………..……...3,6,8

## AGENCY FIELD MANUALS AND OFFICIAL MEMORANDA

**Adjudicator's Field Manual 3.4**………………………………………………**3,18**

**Adjudicator's Field Manual 10.15**………………………………………...........**4**

**USCIS Policy Memorandum PM-602-0085**…………………………………**18**

## FEDERAL STATUTES & UNITED STATES CODE

**5 U.S.C. §§701-706**…………………………………………………...…**14,18,24**

**8 C.F.R. §204.6**……………………………**4,5,6,9,10,11,12,13,15,16,19,21,22,23,24**

**8 C.F.R. §212.8(b)(4)**…………………………………………………………...**9**

v

Plaintiff's Responsive Brief in Support of Cross Motion for Summary Judgment
Kim v. Baran / Case No. SACV 13-1752 AG (RNBx)

## I.  **INTRODUCTION & SUMMARY OF COUNTERARGUMENTS**

The CAR amply supports a finding that Plaintiff has satisfied all requisite elements of the I-526 analysis and has therefore established a prima facie showing of I-526 eligibility beyond the preponderance of the evidence.

Nevertheless, Defendant maintains the AAO properly denied Plaintiff's I-526 on the following three grounds: (1) Plaintiff allegedly did not meet his burden by the preponderance to document the lawful source of his capital investment funds; (2) Plaintiff allegedly did not meet his burden by the preponderance that the new commercial enterprise ("Autopartsman") has met or *will meet* the employment creation requirement; and (3) Plaintiff allegedly did not meet his burden by the preponderance of placing the required amount of capital at risk of investment loss. *See* Defendant's Opening Brief ("DOB") at Pg. 8, ¶3.

Plaintiff's Responsive Brief will again establish that Plaintiff made a prima facie showing of I-526 eligibility by the preponderance.  More importantly, Plaintiff will point to specific abuses of discretion in the CAR under each alternative ground of Defendant's original denial decision ("Decision") warranting reversal of said Decision and entitling Plaintiff to summary judgment as a matter of law.

## II.  **LEGAL STANDARD OF REVIEW & BURDEN OF PROOF**

1.  APA Standard of Review for Agency Decisions:

Judicial review of the denial of an I-526 Petition is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §§701-706.  Thus, under the APA, which guides our review of this agency decision, "a reviewing court *shall* hold unlawful and set aside agency action found to be arbitrary, capricious, an abuse of discretion, or not in accordance with law", or, "unsupported by substantial

evidence." *See* Id. "The court shall review the whole record and due account shall be taken of the *rule of prejudicial error. See* Id. (emphasis added)

In addition, this action by USCIS is reviewable because it is inconsistent with the agency's own legal standards. *See* Heckler v. Chaney, 470 U.S. 821, 833 (1985) (holding that administrative agencies are not "free to disregard legislative direction in the statutory scheme that the agency administers"); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 414 (1971) ("In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements."); Love Korean Church v. Chertoff, 549 F.3d 749, 759-60 (9th Cir. 2008) (vacating agency's visa revocation decision as "inconsistent with the regulation and based on factual findings that are unsupported by substantial evidence"). In addition, a reviewing court may find an abuse of discretion when the decision is based on an improper understanding of the law. *See* Fred 26 Importers, Inc. v. DHS, 445 F. Supp. 2d 1174 (2006); Kaliski v. District Dir. of INS, 620 F.2d 214, 216 n.1 (9th Cir. 1980). Therefore, if Plaintiff can show the Decision either improperly, inconsistently, arbitrarily and capriciously applied, failed to distinguish, or disregarded substantial evidence or the controlling legislative EB-5 cases of: Matter of Soffici, 22 I&N Dec. 158 (Assoc. Comm., 1998); Matter of Izummi, 22 I&N Dec. 169 (Assoc. Comm., 1998); Matter of Hsiung, 22 I&N Dec. 201 (Assoc. Comm., 1998); or Matter of Ho, 22 I&N Dec. 206 (Assoc. Comm., 1998) (collectively "Controlling EB-5 Cases") then this Court must find an abuse of discretion according to the authorities citied above.

Under the APA, federal courts review USCIS actions "to determine whether the [agency] acted arbitrarily or capriciously or abused its discretion." *See* Id. at 42. The requirement that agency action not be arbitrary and capricious includes an

obligation that the agency adequately explains its result.  *See* <u>Public Citizen, Inc. v. FAA</u>, 988 F.2d 186, 197 (D.C. Cir. 1993).  Thus, if the agency "merely 'parrots the language of a statute' without providing a rational – much less reasoned – explanation for its result," it has failed to meet its burden of providing an adequate explanation for the court to review."  *See* <u>Evangelical Lutheran Church</u>, 288 F. Supp. 2d at 41; <u>Dickson v. Sec'y of Def.</u>, 68 F.3d 1396, 1404-05 (D.C. Cir. 1995).

    2.  <u>Preponderance of the Evidence Standard of Proof Applies to Original USCIS Administrative Actions</u>:

The standard of proof applied in administrative immigration proceedings is the "preponderance of the evidence" standard ("the preponderance").  *See* <u>U.S. v. Cardozo-Fonseca</u>, 480 U.S. 421 (1987) (defining "more likely than not" as a greater than 50 percent probability of something occurring).  Thus, even if the director has some doubt as to the truth, if the petitioner submits relevant, probative, and credible evidence that leads the director to believe that the claim is "probably true" or "more likely than not," the applicant or petitioner has satisfied the standard of proof.  <u>Id</u>.

The controlling administrative decision in <u>Matter of Chawathe</u>, 25 I&N Dec. 369 (AAO 2010) (designated as a binding USCIS Adopted Decision) imposes an *obligatory legal duty* for USCIS adjudicators to, among other duties, accord substantial weight to statements of a company officer and others "in a position to have first-hand knowledge" of the company's operations; *See* <u>Id</u>.

Moreover, the Adjudicator's Field Manual ("AFM") specifically states: "Policy material is binding on all USCIS officers and must be adhered to unless and until revised, rescinded or superseded by law, regulation or subsequent policy, either specifically or by application of more recent policy material." *See* AFM 3.4.

Finally, the AFM instructs that a decision, and by implication, issuance of an RFE, cannot be based on intangible or imagined circumstances.  *See* AFM 10.15

("Uniformity of Decisions") specifically provides: "An exercise of discretion does not mean the decision can be arbitrary, inconsistent or dependent upon intangible or imagined circumstances. The case law and regulatory guidelines provide a framework to assist in arriving at decisions which are consistent and fair, regardless of where the case is adjudicated or by whom." *See* Id. Thus, a few errors or minor discrepancies are not reason to question an alien's credibility. *See* Shah v. INS, 220 F.3d 1062, 1068 (9th Cir. 2000). Therefore, if Plaintiff met his initial burden by 51%, then Plaintiff has met his burden by the preponderance.

## III.  LEGAL ARGUMENTS & ANALYSIS

To begin, Plaintiff would like to highlight the fact that Defendant incorrectly refers to the AAO's decision as controlling. *See* DOB Pg. 8, ¶3.

On the contrary, the de novo issue presented in this case is whether Defendant's *initial* Decision was reasonable or unreasonable in light of the CAR and controlling case law, statutes, regulations, and policy memoranda. *See* APA, 5 U.S.C. §706; U.S. v. Cardozo-Fonseca, 480 U.S. 421 (1987)

**A. An objective review of the CAR supports a positive finding that Plaintiff met his source of funds burden by the preponderance and Defendant abused its discretion by unilaterally imposing additional criteria over and beyond the clear, objective criteria under 8 C.F.R. §204.6(j)(2) as set forth in the controlling 9th Circuit cases of Ruangswang & Patel:**

8 C.F.R. §204.6(j) states, in pertinent part: "To show petitioner has invested, or is actively in the process of investing, capital obtained through lawful means, the petition **must be accompanied**, as applicable, by: (i) Foreign business registration records; (ii) Corporate, partnership [ or any other business entity], and personal tax returns including income, franchise, property, or any other tax returns of any kind filed within five years, with any taxing jurisdiction in or outside the United States by or on behalf of the petitioner; or (iii) Evidence identifying *any*

*other source(s) of capital.*" *See* 8 C.F.R. §204.6(j); Matter of Ho, 19 I&N Dec. 582 (BIA 1988) (emphasis added).

     1. Plaintiff has proved lawful source of funds beyond the preponderance and any inconsistencies arise from Defendant's lack of an objective, reasonable interpretation of the CAR:

        A. Any inconsistencies that arise originate from Defendant's failure to acknowledge Plaintiff's Exhibit 3 supporting documentation attached to Plaintiff's initially filed Form I-526.

Defendant claims Plaintiff has made insufficient claims as to the source of funds by first claiming source of funds solely originated from his Columbian income tax returns, then after the RFE, claiming source of funds originated from evidence comprised of the Miglia dividend distribution ("Miglia Funds").

This is simply not true. In Plaintiff's originally filed I-526 Petition, Plaintiff clearly stated: (1) Plaintiff capitalized Autopartsman with an initial investment of $200,000 USD on 22-JAN-2010; (2) Plaintiff is a 50% owner of Autopartsman; and (3) Plaintiff has made a total capital investment of $1,000,000 USD to date (at the time of filing which was 09-FEB-2011). *See* CAR 683. Plaintiff's submission of his last five years of Columbian tax returns was merely perfunctory as required by 8 C.F.R. §204.6(j)(2).

However, Defendant fails to mention that Plaintiff attached to his initial I-526, as original Exhibit 3, cashed checks, bank statements and transcripts, and wire transfer and deposit records, all consummated before the date of filing, directly from either Plaintiff or his brother, Soon Taek Kim (the other 50% owner of Autopartsman) into capitalizing Autopartsman. *See* CAR 718-732. Plaintiff's personal contribution was $1,000,000 USD, the requisite investment amount under EB-5 law. *See* Id. Together, the two owners capitalized Autopartsman well in excess of the required $1 million dollars. *See* Id. Defendant's original RFE even

acknowledges this amount as follows: "And although the petitioner has submitted evidence to show that he had wired a total of $1,000,000 of the required investment into the new commercial enterprise's bank account (Exhibit 3)..." *See* CAR 678.  Plaintiff has satisfied his source of funds burden by the preponderance.

      B.  The Miglia Dividend Distribution Letter ("Miglia Letter") properly corroborates lawful source of funds under <u>Izummi</u>, <u>Soffici</u>, and <u>Chawathe</u>; in addition, the translation argument is irrelevant as this primary piece of evidence is in the English language.

Defendant states: "USCIS's interpretation of 8 C.F.R. §204.6(j)(3) is entitled to significant deference.  Where an organic statute and its regulations are ambiguous, courts should defer to the agency's interpretation of its own regulations." *See* DOB pg. 9, ¶3.  On the contrary, 8 C.F.R. §204.6(j)(3) is unambiguous and interpretation is established by the Controlling EB-5 Cases.

<u>Matter of Izummi</u> is particularly helpful here.  In <u>Izummi</u>, the court held that petitioner could not prove lawful source of funds when, although petitioner documented receipt of funds into petitioner's U.S. bank account, petitioner did not document where the funds originated.  *See* <u>Izummi</u> at 195.  The <u>Izummi</u> Court stated: "It is not known if the money came from the petitioner's overseas accounts, from his U.S. accounts, or from some other source.  As the petitioner has not documented the path of the funds, *such as by wire-transfer records*, the petitioner has failed to meet his burden of establishing that the initial $120,000 were his own funds."  *See* <u>Id</u>. (emphasis added)

The facts of this case are highly distinguishable from <u>Izummi</u>.  In response to the RFE, Plaintiff comprehensively documented his ownership stake in Miglia Motors, to the Miglia Funds, to the wire transfer to his Ecuadorian bank account, to the wire transfer into his U.S. bank account, finally to the checks and wire transfers directly into Autopartsman.  Notably, Plaintiff used the exact tracing source (wire-

transfer records) that the Izummi Court agreed would satisfy a petitioner's source of funds tracing requirement.

In Matter of Soffici, the court held that a petitioner cannot meet its source of funds burden by merely claiming "the first $450,000 came from my personal savings and the sale of a house and 'the second $500,000 came from the sale of 'our business." *See* Soffici at 164-65. The Soffici Court established the EB-5 principle that "simply going on record without supporting documentary evidence is not sufficient." *See* Id. Importantly, the Soffici Court stated that had the petitioner in that case documented the case with a sales contract or deed establishing ownership and price for the house or business, that petitioner would have satisfied its source of funds burden. *See* Id.

In this case, Plaintiff submitted the exact evidence (ownership and precise amount) which the Soffici Court would have found to satisfy the source of funds requirement in that case. Instead of 'simply going on the record without supporting documentary evidence', Plaintiff submitted detailed evidence including his ownership interest in Miglia Motors, the Miglia Letter signed by the Miglia general manager, and detailed financial and wire records tracing the Miglia Funds to Autopartsman. *See* 558-620.

Furthermore, instead of according substantial weight to statements of a company officer and others "in a position to have first-hand knowledge" of the company's operation, Defendant disregards the Miglia Letter as quote, "the delayed and unsworn letter". *See* Matter of Chawathe at 369; DOB Pg. 9, ¶3. The Miglia Letter was in English, signed by the Miglia Motors General Manager and printed on Miglia Motors letterhead. In short, Plaintiff has provided substantial evidence proving lawful source of funds in excess of the controlling Izummi and Soffici standards which control this issue.

Curiously, Defendant attacks the credibility of the Miglia Letter based on the fact that it is two years delayed.  *See* DOB Pg.9, ¶2.  Defendant fails to present any rationale or guidance as to what the proper timing of such a letter would be under standard Ecuadoran business practices.  If timing is indeed an indicia of credibility, Plaintiff would point out that the Miglia Letter was issued <u>6 months</u> before Defendant issued its RFE putting Plaintiff on notice (for the first time) of the lawful source of funds issue.  If anything, the timing of the Miglia Letter lends *credence* to Plaintiff's position.

Lastly, Defendant attacks the Miglia Funds as not being reported in Plaintiff's last five years of his <u>Columbian</u> income tax returns.  Defendant fails to realize that Plaintiff is a dual citizen of South Korea and Ecuador, and conducts business in South Korea, Ecuador, Columbia, and the United States (ironically currently maintaining valid E-2 visa status as a nonimmigrant treaty trader entrepreneurial investor).  Had Defendant realized that Miglia Motors was a corporation conducting business, and paying taxes, under the laws of Ecuador, Defendant would have properly requested Ecuadoran tax returns instead of myopically discounting Plaintiff's Columbian tax returns as not accounting for the Miglia Funds.  Foreign countries have tax systems, corporate reporting requirements, tax reporting exemptions, exceptions, and carry-overs that drastically differ from IRS requirements.  EB-5 applicants by definition submit foreign financial documents to prove their burden which is why the preponderance (51%) standard exists in these cases.  For Defendant to unjustly impose a heighted burden on Plaintiff equates to action ultra vires and is an abuse of discretion.

In sum, Plaintiff has again proved this element beyond the preponderance and Defendant has failed to point to any shred of evidence reflecting impropriety, unlawful source of funds, or inadequate tracing of funds.  The inconsistency in the

source of funds analysis was created by Defendant's lack of acknowledgment of Defendant's attached Exhibit 3 to Form I-526.  *See* CAR 683.

> 2. <u>Defendant abused its discretion by unilaterally imposing additional criteria over and beyond the clear, objective criteria under 8 C.F.R. §204.6(j)(2) as set forth in the controlling 9th Circuit cases of Ruangswang & Patel</u>:

In <u>Ruangswang</u>, the 9th Circuit held the Board of Immigration Appeals ("BIA") abused its discretion by requiring additional criteria greater than the regulations clear, minimum objective criteria.  *See* <u>Ruangswang v. INS</u>, 591 F.2d 39 (9th Cir. 1978) (holding the BIA abused its discretion when it added a 'substantiality' requirement when petitioner satisfied the objective criteria in the statute sufficient to qualify the petitioner under the investor exemption to the labor certification requirement under 8 C.F.R. §212.8(b)(4)).  The <u>Ruangswang</u> Court went on to state: "There simply was no room for the agency to interpret the regulation so as to add another requirement."  *See* <u>Id</u>.

In <u>Patel</u>, much like <u>Ruangswang</u>, the 9th Circuit found the BIA abused its discretion by requiring the petitioner to show his 8 C.F.R. §212.8(b)(4)) investor exemption to the labor certification process would "tend to expand job opportunities" in the U.S. when he was in apparent compliance with the criteria set forth in 8 C.F.R. §212.8(b)(4).  *See* <u>Patel v. INS</u>, 638 F.2d 1199 (9th Cir. 1980).

These two controlling 9th Circuit cases stand for the proposition that an agency abuses its discretion when its decisions are either contrary to the plain language of a statute or regulation or add a requirement not contained in the statute or regulation.

Here, the statute at issue is 8 C.F.R. 204.6(j), which states in pertinent part: <u>Initial evidence to accompany petition</u>: A petition submitted for classification as an alien entrepreneur must be accompanied by evidence that the alien has invested or

is actively in the process of investing lawfully obtained capital in a new commercial enterprise in the U.S. which will create full-time positions for not fewer than 10 qualifying employees.  Subsection (3) further states: To show that the petitioner has invested, or is actively in the process of investing, capital obtained through lawful means, the petition must be accompanied as applicable, by: (i) Foreign business registration records; (ii) Corporate, partnership, and personal tax returns…; (iii) Evidence identifying any other sources(s) of capital; or (iv) Certified copies of judgments…  *See* Id.

Here, Plaintiff's I-526 Petition was accompanied by substantial evidence showing he was not only actively in the process of investing, but rather, had already fully invested into Autopartsman, the entire requisite capital investment amount under 8 C.F.R. §204.6(f)(1).  Much like the petitioners in Ruangswang and Patel, Plaintiff has made a prima facie showing under the clear and objective criteria set forth in 8 C.F.R. 204.6(j).  Much like the BIA in Ruangswang and Patel, Defendant here unilaterally self-imposed additional criteria for Plaintiff to meet over and beyond the objective criteria clearly set forth 8 C.F.R. 204.6(j) in Defendant's initial RFE as follows in pertinent part: "Therefore, submit documents to identify and trace all sources and origins of the funds invested in the company … prior to the date the initial investment was made and any other evidence identifying the source(s) of the petitioner's investments into the new commercial enterprise." *See* CAR 678.

Nowhere in the clear, objective criteria of 8 C.F.R. 204.6(j) does it give Defendant the authority to place the additional burden on the Plaintiff to submit only those documents dated prior to the date the initial investment was made.  The only objective criteria Plaintiff needed to overcome under 8 C.F.R. 204.6(j) was for Plaintiff to submit evidence (before or after the initial investment was made)

that the requite amount of lawful funds were actively being invested, or invested into the qualifying new commercial enterprise.

In sum, because Defendant unilaterally imposed unreasonable, additional criteria over and above the objective criteria set forth in 8 C.F.R. 204.6(j), and moreover, disregarded Plaintiff's substantial evidence satisfying the requisite objective criteria under 8 C.F.R. 204.6(j), Plaintiff has proved Defendant abused its discretion under this alternative denial reason precisely like the controlling 9th Circuit cases of <u>Ruangswang</u> and <u>Patel.</u>

**B. An objective review of the CAR supports a positive finding that Plaintiff's comprehensive business plan ("Business Plan") <u>exceeds</u> the requirements set forth in the seminal case of <u>Matter of Ho</u>, and that Defendant abused its discretion twice here by first ignoring the <u>Matter of Ho</u> adjudicators' mandate and then by completely disregarding Plaintiff's originally submitted substantial evidence, the Business Plan.**

   1. <u>An objective review of the CAR and a Matter of Soffici analysis lead to the conclusion that Autopartsman is a newly created commercial enterprise and not the purchase of a preexisting business</u>:

8 C.F.R. §204.6(h) states in pertinent part: "Establishment of a new commercial enterprise may consist of: (1) The creation of a new business; (2) The purchase of an existing business and simultaneous or subsequent restructuring or reorganization such that a new commercial enterprise results; or (3) The expansion of an existing business… *See* <u>Id</u>.

Defendant improperly pigeon holes Autopartsmans into the second category (purchase and/or restructuring of an existing business) of NCE as defined under 8 C.F.R. §204.6(h)(2). <u>Matter of Soffici</u> is controlling on this issue.  In <u>Soffici</u>, the EB-5 petitioner's NCE investment consisted of a purchase and restructuring of a preexisting and operational Howard Johnson's Motor Lodge.  *See* <u>Soffici</u> at 167.

Importantly, petitioner submitted an Agreement of Sale and Purchase of the NCE, a one week payroll journal, and a marketing plan.  *See* Id. at 167-68.  It is noteworthy that the marketing plan did not address the issue of future hiring.  *See* Id.  The Soffici Court held and established the proposition that when an EB-5 applicant invests into a 8 C.F.R. §204.6(h)(2) NCE, the EB-5 applicant must disclose the previous full-time employment level of the purchased NCE in order to prove a net addition of 10 new full-workers.  The Soffici Court went on to state the following: "If a petitioner has not already created the requisite number of positions, he must submit a comprehensive business plan clearly demonstrating that the business will need the applicable level of employment.  *See* Id.  The plan must contain a timetable for hiring and must be credible.  *See* Id.; Matter of Ho at 213.

In this case, the facts here are highly distinguishable from Matter of Soffici. First, on his I-526 Petition, Plaintiff clearly established the fact that Autopartsman was an NCE resulting from the creation of a new business.  *See* CAR 683. Accompanying his I-526 Petition, Plaintiff submitted supporting documentation consisting of incorporating documents overwhelmingly proving Autopartsman is a newly incorporated California company, wholly separate and apart from Parts World Corporation ("PWC").  *See* CAR 690-780.

Defendant maintains the AAO correctly determined the record does not support a claim that Autopartsman and PWC are unrelated.  *See* DOB at Pg. 14, ¶2. Plaintiff does not disagree.  However, the issue of whether Autopartsman and PWC are *related* is immaterial.  The issue turns on whether Autopartsman purchased PWC and simultaneous or subsequently restructured or reorganized it such that a NCE results.  *See* 8 C.F.R. §204.6(h)(2).  Towards this end, the CAR is clear that Autopartsman is a 8 C.F.R. §204.6(h)(1) NCE.  Unlike the Matter of Soffici petitioner who clearly submitted an Agreement for Sale and Purchase, Plaintiff's investment funds where wholly invested into Autopartsman as a newly

created corporate entity, not to purchase PWC.  The only derogatory evidence Defendant points out is that Plaintiff is the CEO for both Autopartsman and PWC, that PWC sublet its business premises to Autopartsman, and that a person with a PWC email address was a named contact on an Autopartsman utility bill.

First, it is absolutely within the parameters of <u>Matter of Soffici</u> for Plaintiff to be both CEO of Autopartsman and PWC.  To assume impropriety when Plaintiff is merely conducting business with family members is absolutely prejudicial.  As business loyalty and trust are of paramount concern in all business dealings, it is extremely commonplace for family members to conduct business using separate and independent business formations as to minimize individual liability and maximize tax advantage.  That is just smart business sense.  In the absence of an Agreement of Purchase and Sale like in <u>Matter of Soffici</u>, or any other evidence of commingling of funds or poaching of preexisting employees, the fact Plaintiff is CEO of both Autopartsman and PWC, standing alone, is insufficient to prove Autopartsman is an  8 C.F.R. §204.6(h)(2) NCE.

Next, the fact that PWC sublet its business premises to Autopartsman is irrelevant to the <u>Soffici</u> analysis.  It makes absolute business sense to save cost on rent if it is operationally feasible for two industry-related companies to share a single business premise.  What is more, Defendant fails to mention highly probative evidence Plaintiff submitted in support of his motion to reopen.  In 2012, as operations expanded, Plaintiff signed a new lease and moved into a larger facility in Commerce, California.  *See*  CAR 945-86.  This is objective, probative evidence that, instead of Defendant's imagined circumstance scenario, Plaintiff was merely using his business acumen to control rent expenses while Autopartsman was in its nascent building stage.  Once showing signs of profit, expansion, and growth, Plaintiff immediately moved Autopartsman into a larger facility in order to accommodate greater inventory positions, larger orders,

additional employees, and ultimately, increased profit.  This Court should defer to Plaintiff's best business judgment as Autopartsman's CEO.

Finally, Defendant points to the fact that PWC assigned "other service contracts" to Autopartsmans and an employee with a PWC email address is a named contact under an Autopartsman "service contract".  *See* DOB Pg. 14, ¶2. Autopartman's subleasing agreement with PWC included an express covenant stating: "Subtenant shall not violate any of the terms of the Lease, and that Subtenant shall comply with all provisions of the Lease."  *See* Car 740.  The "other service contracts" Defendant puts into question are merely Cbeyond contracts for internet and telephone services.  *See* CAR 757-769.  Defendant seeks to impute impropriety on Plaintiff for merely performing his obligation under the sublease agreement.  If anything, Defendant is highlighting the fact that Plaintiff is affirmatively taking day-to-day operational control of Autopartsman, putting his investment funds at risk into direct, necessary operational expenses, and proactively seeking to generate an immediate return on his business investment to create American jobs and to generate entrepreneurial profits.  The only indicia of comingling of PWC employees by Autopartsman is Defendant's assertion that an employee with a PWC email address was a named contact on an Autopartsman services contract agreement.  *See* DOB Pg.14, ¶2.  However, a more thorough review of the CAR highlights that this service contract in question, again for internet and telephone services, has an issuance date of 26-JAN-2010.  *See* CAR 764.  Alternatively, the subleasing agree has an execution date of 09-FEB-2010. All this proves is that Plaintiff was proactively trying to get his telephone and internet services for Autopartsman operational *before* Plaintiff even executed his subleasing agreement.  Necessarily, Autopartsman was unable to commence its tenancy before the legal execution of the subleasing agreement.  It is common sense that there needs to be a contact person on the shared premises in order for the

Cbeyond contractors to be allowed access into the premises to avoid trespass liability.  It makes logical sense to delegate this one time assignment to one of his preexisting PWC employees as they would be currently available on the premises.  Thus, these two allegations fall massively short of categorizing Autopartsman as a 8 C.F.R. §204.6(h)(2) NCE under the Soffici analysis and common sense.

Plaintiff has clearly established Autopartsman is an 8 C.F.R. §204.6(h)(1) NCE and substantial regard should be given to Autopartsman's Business Plan which includes a detailed future hiring schedule in compliance with Soffici.

2.   Defendant committed an abuse of discretion by first ignoring or acting inconsistent with the Matter of Ho adjudicators' guidelines, and then by completely disregarding Plaintiff's substantial evidence set forth:

8 C.F.R. §204.6(i) states in pertinent part: "To show that a NCE will create not fewer than ten full-time positions for qualifying employees, the petition must be accompanied by documentation … if such employees have already been hired **following** the establishment of the NCE; **or** (B) a comprehensive business plan showing that, due to the nature and projected size of the NCE, the need for not fewer than then ten qualifying employees will result, including approximate dates, within the next two years, and when such employees will be hired." See Id.

The federal regulations pertaining to the filing of Form I-526 require a comprehensive business plan that demonstrates requisite jobs will be created within the two year period of conditional residence.  See 8 CFR 204(j)(4)(i)(B).  The Field Memo clarifies when the 8 CFR 204.6(i)(B) "two year period" begins: "USCIS will deem the two-year period to commence six months *after the adjudication of the Form I-526*."  See CAR 667. (emphasis added)  Defendant is requiring Plaintiff to show the creation of jobs even before the I-526 is approved.

Defendant maintains that since Plaintiff was operating an E-2 business enterprise, Plaintiff was required to immediately prove full EB-5 employment

creation at the time of filing and blatantly ignores Plaintiff's originally submitted Business Plan altogether, either committing a material oversight or blatantly disregarding substantial evidence under <u>Matter of Ho</u>.  *See* DOB Pg.12, ¶3.

   <u>Matter of Ho</u> is controlling on this issue and states in pertinent part: "A **comprehensive** business plan should contain a description of the business, its products and/or services, and its objectives.  The plan should contain a market analysis…It should discuss the marketing strategy of the business, including pricing, advertising, and servicing. The plan should set forth the business's organizational structure and its personnel's experience.  It should explain the business's staffing requirements and contain a timetable for hiring, as well as job descriptions for all positions. It should contain sales, cost, and income projections. Most importantly, the business plan must be credible."  *See* <u>Id</u>. at 213.

   Unlike the petitioner in <u>Matter of Ho</u>, whose 4 page business plan was found inadequate, here, Plaintiff submitted a comprehensive, 22 page Business Plan (2011-2015 projections) including: an executive summary; company history; business objectives & mission; complete company start-up & ownership disclosures; detailed products & services summary including product lines, suppliers, brand parts, and dealerships; complete U.S. & local market analysis including competition, advertising, competitive edge analysis, and sales forecast; complete management summary including management employment profiles & history, projected payroll & employees (30 employees in 2011, 62 employees in 2012, 100 employees in 2013, 125 employees in 2014, and 143 employees in 2015); organizational chart; projected income statement, projected asset value & balance sheet, and a cash flow statement.  *See* CAR 692-713.  Lastly, as 'credibility' is the primary factor in the <u>Ho</u> analysis, Plaintiff would like to point

out that the Business Plan was prepared by a two-man team, one being a Certified Public Accountant. *See* CAR 692.

In short, Plaintiff has proved beyond the preponderance the requisite projected job creation within the statutory time frame with substantial evidence. Defendant's disregard of the Business Plan rises to an abuse of discretion for disregarding substantial evidence and acting in contravention to clearly delineated administrative guidelines and controlling case law, namely <u>Matter of Ho</u>.

**C. Defendant is procedurally barred from raising the "at risk" issue for committing a clear violation of Plaintiff's constitutional procedural due process rights; nevertheless, Plaintiff still satisfies the "at risk" issue by the preponderance, completing his EB-5 prima facie case.**

    1. <u>Defendant is procedurally barred from raising the "at risk" issue for committing a clear abuse of discretion by violating Plaintiff's procedural due process notice rights during the RFE stage and again takes rogue action directly in conflict with the AFM and USCIS Policy Memoranda</u>:

The 5th Amendment of the United States Constitution states, in pertinent part: "No person shall be deprived of life, liberty, or property without due process of law." *See* 5th Am., U.S. Constitution.

In addition, the APA states: "A reviewing court **shall** hold unlawful and set aside agency action found to be arbitrary, capricious, an abuse of discretion, or not in accordance with law", or, "**unsupported by substantial evidence**." *See* 5 U.S.C. §§701-06. "The court shall review the whole record and due account shall be taken of the *rule of prejudicial error*. *See* <u>Id</u>. (emphasis added)

The Adjudicator's Field Manual ("AFM") specifically states: "Policy material is binding on all USCIS officers and must be adhered to unless and until revised, rescinded or superseded by law, regulation or subsequent policy, either

specifically or by application of more recent policy material." *See* AFM 3.4. "Policy material" includes regulations, field/administrative manuals. *See* Id.

USCIS' June 03, 2013 Policy Memorandum on Requests for Evidence ("RFE") and Notices of Intent to Deny ("NOID") states in pertinent part: In some cases, particularly where the response to an RFE opens up new lines of inquiry, a follow-up RFE might prove necessary. **However, officers *must* include in a single RFE <u>all</u> the additional evidence they anticipate having to request**. A NOID is required when derogatory information is uncovered during the course of the adjudication <u>that is not known to the individual</u>, according to 8 CFR 103.2(b)(16). *See* USCIS Policy Memo PM-602-0085.

The CAR is clear the Decision includes a completely unknown set of "at risk" denial reasons that was <u>not</u> mentioned at all in Defendant's RFE. *See* CAR 544-550, 675-79. Plaintiff would agree that a reasonable course of agency action would be to reissue a new RFE or even issue an NOID in order to provide Plaintiff with notice and an opportunity to be heard on the matter before coming to a *proper* decision. Instead, Defendant egregiously commits a textbook violation of procedural due process by depriving Plaintiff of notice and an opportunity to be heard in violation of its own agencies mandatory notice requirements and standards. *See* Id. Furthermore, the Decision unilaterally makes an after-the-fact determination on the at risk issue without any clear standard. *See* Id. The chance for Defendant to remedy this procedural notice violation have long past, and the subsequent substantive injury inflicted on Plaintiff is material, concrete, and deeply prejudicial. Plaintiff has suffered clear procedural prejudicial bias that manifested into an egregious substantive injury in fact.

In short, Defendant has committed an abuse of discretion on this alternative ground of denial for violating Plaintiff's procedural due process rights.

2. <u>Nevertheless, an objective review of the CAR leads to a positive finding that Plaintiff has satisfied the "at-risk" element by the preponderance, completing Plaintiff's prima facie showing for EB-5 eligibility</u>:

Although Plaintiff believes this Court will find this issue equitably barred in the interest of justice, Plaintiff nevertheless reserved to right to prove up this issue and should be given a platform through this Court for a reasonable opportunity to be heard on the issue.  *See* POB Pg.19, ¶2.

8 C.F.R. §204.6(j)(2) states in pertinent part: "To show the petitioner has invested, or is actively in the process of investing, the required amount of capital, the petition must be accompanied by evidence that the petitioner has placed the required amount of capital at risk **for the purpose of generating a return on the capital placed at risk**.  Evidence of mere intent to invest will not suffice to show that the petitioner is actively in the process of investing.  The alien must show <u>actual commitment</u> of the required amount of capital.  Such evidence may include: (1) Bank statements showing amounts deposited in U.S. business accounts for the enterprise; (2) Evidence of assets purchased for use in the U.S. enterprise; (3) Evidence of property transferred from abroad for use in the U.S. enterprise; and (4) Evidence of monies transferred or committed to be transferred to the new commercial enterprise in exchange for shares of stock; and (5) Evidence of loans secured by the assets of the petitioner, other than those committed to the NCE, which the petitioner is personally and primarily liable.  *See* <u>Id</u>.

<u>Matter of Ho</u> and <u>Matter of Hsiung</u> are the seminal "at-risk" cases of the 4 Controlling EB-5 Cases.  In <u>Ho</u>, the petitioner was the sole shareholder of the NCE in question as well as the sole corporate officer, giving that petitioner exclusive and unfettered control over all corporative business activities.  *See* <u>Id</u>.  In addition, the <u>Ho</u> petitioner's only meaningful commitment towards the "at-risk" analysis was signing a lease and depositing $500,000 in the NCE's corporate account.  *See*

Id.  More importantly, the Ho Court pointed to possible concrete actions that the petitioner did not make including: the purchase of inventory or office equipment, commencing business operations according to the petitioner's business plan timeline, negotiating with possible suppliers and buyers, and contracting with local utilities such as telephone or electric companies.  See Id.

In Hsiung, the court held that the petitioner failed to meet the "at-risk" factor because the NCE was not even in the start-up phase, had not conducted any sort of business or financial analysis and had not engaged in any discussions with health-care facilities, state health officials, or real-estate agents.  See Hsuing at 202.

Ho and Hsiung establish the proposition that simply formulating an idea for future business activity, without taking meaningful concrete action, is insufficient for an EB-5 petitioner to meet the "at-risk" requirement.

In this case, Ho and Hsiung are easily distinguishable from the facts here.  Unlike the sole shareholder petitioner in Ho, Plaintiff is a 50% shareholder of Autopartsman and its CEO.  See CAR 683-84, 718-20.  Plaintiff's brother, Soon Taek Kim, is the other 50% owner of Autopartsman and its CFO.  Notably, Plaintiff does not have a majority share of Autopartsman and all business decisions must be ratified, or can be blocked, by Soon Taek Kim.  Unlike the petitioners in Hsiung and Ho, who either had not even commenced the start-up phase or conducted meaningful concrete action to get business started, Plaintiff had already committed 100% of his investment funds at-risk at the time of filing his I-526 Petition.  See CAR 683, 721-31.  In addition, Plaintiff already had a lease agreement, all incorporating documents in order, including a business license and seller's permit, and electric and phone service billing utility agreements signed and activated.  See CAR 690-780.

Under 8 C.F.R. §204.6(j)(2) a petitioner makes a positive showing that requisite investment funds have been invested or are actively in the process of

being invested when the petitioner has placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk.  *See* Id.

On appeal, even on short notice, Plaintiff submitted substantial at-risk documentation comprised of: (1) 2012 Inventory Value Reports; (2) 2011 Autopartsman Balance Sheet showing $3,078,056.22 in total assets and $2,165,857.63 in total equity; (3) Jan-Jun 2011 Profit and Loss Statement showing $2,739,929.64 in total income (for a 6 month period), $1,629,792.60 in inventory purchases, and $562,615.84 in total expenses; (4) 2011 W-2s and DE-9s for **33** non-family, full-time employees with **$537,442.01 in employee wages paid**; and (5) Invoices totaling $365,875 for fixtures, equipment, and other construction materials to get Autopartman's immediately operational. *See* CAR 037-422

In support of Plaintiff's motion to reopen, Plaintiff submitted: (1) Updated 2013 utility bill for new business premise; (2) new business lease agreement for new business premise; (3) Photographs of new business premise showing Autopartsman signage, massive inventory stockpiles, and customers engaged in business; (4) 2012 W-2's for **36** non-family, full-time employees with **$654,357.72 in employee wages paid**; (5) 2010 corporate tax return showing $340,558 in gross sales and a net income of $77,510; (6) 2011 corporate tax return showing **$5,350,789** in gross sales and a net income of **$1,298,589**; and finally (7) 2012 corporate tax return showing **$5,925,835** and a net income of **$1,560,079**.  *See* CAR 941-1140.

Unlike the petitioners in Hsiung and Ho, Plaintiff here has set forth a record and pattern of progressively expanding business activity well within the parameters of its Business Plan showing a clear pattern of growth in sales, net income, employee hiring and payroll, and even moved its operations to a larger facility to accommodate its meaningful expansion.

Defendant attacks Plaintiff on this issue on two grounds: (1) 2011 inventory purchases (Inventory Purchases) amounting to $1,629,793; and (2) 2011 loans receivable ("Loans").  *See* DOB Pg. 15-16.

First, under the Inventory Purchases argument, Defendant's sole contention is that it is unknown whether the Inventory Purchases came from either Plaintiff's investment or Autopartsman's net income.  *See* Id. This admission is **fatal** to Defendant's argument.  8 C.F.R. §204.6(j)(2) truncated states: "A petitioner makes a positive showing of active investment when requisite investment funds are put at risk for the purposes of generating an income."  Therefore, whether or not the Inventory Purchase came from Plaintiff's original investment funds or came from Autopartsman's net profit, Plaintiff s satisfies the at-risk requirement of 8 C.F.R. §204.6(j)(2).  If the Inventory Purchase came from Plaintiff's original investment, Plaintiff would be putting his original investment at risk by purchasing inventory to be sold at a profit.  If the Inventory Purchase came from Autopartsman's net income, that is even better.  The gravamen of 8 C.F.R. §204.6(j)(2) is a petitioner's intent to generate a profit.  Defendant states Plaintiff generated a whopping $2,739,929.64 in 2011 net profits.  *See* DOB Pg.15, ¶3.  For Plaintiff to re-invest, instead of siphon away, net profits already generated from his original investment to buy more inventory to generate more profit and hire more employees is exactly the ideal EB-5 situation Congress contemplated.

Second, under the Loans argument, Defendant contends that Autopartsman's 2011 Balance Sheet shows a loan of $1,477,578.48 to an undisclosed party, and another two loans of $123,678.96 each.  *See* DOB 16, ¶1.  This is another example of how Defendant has not studied the CAR with due diligence.  The second two loans totaled $123,678.96 and were loaned to an officer and to a party named JD.  *See* CAR 375.  Nevertheless, Defendant's argument here is irrelevant and unsupported by the 4 Controlling EB-5 Cases.  The only loan issues arising from

the 4 Controlling EB-5 Cases arise when an EB-5 petitioner uses loans as a qualifying investment vehicle into an NCE of which said loans are either secured by assets of the NCE or of which said loans are not primarily guaranteed by the petitioner.  Plaintiff has amply shown his investment, and even his net profits, have been put at-risk to generate more future profit, to further expand payroll, and to further move into a larger business premise to further increase business activity. The Loans are in the asset category because interest is being paid.  Because Defendant points to not one controlling authority as to why this argument is relevant at all here in the face of insurmountable evidence to the contrary, Plaintiff's best business judgment should be given deference.

In sum, even without proper notice and an opportunity to be heard, Plaintiff has proved the at-risk issue well beyond the preponderance in accordance with the controlling cases of <u>Hsiung</u> and <u>Ho</u>.  This completes Plaintiff prima facie showing of EB-5 eligibility.  Defendant has abused its discretion by depriving Plaintiff of his agency notice requirements and procedural protections as set forth above.

## V.  <u>CONCLUSION</u>

Plaintiff has pointed to specific acts of abuses of discretion <u>under each of Defendant's alternative and independent grounds of denial</u> and supported by controlling 9th Cir. abuse of discretion case law along with the 4 Controlling EB-5 Cases as follows:

(A) <u>Source of Funds</u>: Defendant unreasonably added additional criteria above the clear minimum standards delineated in 8 C.F.R. 204.6(j). *See* <u>Id</u>., <u>Ruangswang</u> & <u>Patel</u>;

(B) <u>Job Creation</u>: Defendant failed to consider substantial evidence which was Plaintiff's Business Plan.  *See* 5 U.S.C. §§701-706, <u>Ho</u>, <u>Heckler v. Chaney</u>; and

(C) <u>At-Risk</u>: Defendant violated Plaintiff's procedural due process rights. *See* 5th Am., U.S. Constitution, <u>Citizens to Preserve Overton Park</u>.

For the reasons set forth above and supported by controlling law and the CAR, Plaintiff respectfully submits that he is entitled to summary judgment as a matter of law and that Defendant's Decision should be reversed, and his EB-5 application approved.

DATED:  June 13, 2014

Respectfully submitted,

By:   <u>/s/ Peter I. Hwang, Esq.</u>
        Peter I. Hwang, Esq.
        Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

CASE NO. SACV 13-1752 AG (RNBx)

      I certify that on June 13, 2014, I served a copy of the foregoing on the attorney of record below by filing this document with the Clerk of Court through the CM/ECF system, which will provide electronic notice and an electronic link to the attorney below:

**Sarah Wilson**

**sarah.s.wilson@usdoj.gov**

DATED:  June 13, 2014

                              Respectfully submitted,


                          By:    /s/ Peter I. Hwang, Esq.
                                  Peter I. Hwang, Esq.
                                  Attorney for Plaintiff

Plaintiff's Responsive Brief in Support of Cross Motion for Summary Judgment
Kim v. Baran / Case No. SACV 13-1752 AG (RNBx)
